**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

TOMMY J. EMBREE,

        Plaintiff,

v.                                      Case No: 6:16-cv-928-Orl-40GJK

WYNDHAM WORLDWIDE CORPORATION, WYNDHAM VACATION RESORTS, INC., WYNDHAM VACATION OWNERSHIP, INC., FAIRSHARE VACATION OWNERS ASSOCIATION, RCI LLC, TERRI DOST, PETER HERNANDEZ and ROB HEBELER,

        Defendants.
_____/

## **ORDER**

This cause comes before the Court without oral argument on the following:

1. Defendant, Wyndham Worldwide Corporation's Motion to Dismiss Amended Complaint (Doc. 77), filed April 18, 2017;

2. Motion to Dismiss Amended Complaint by Defendants Wyndham Vacation Resorts, Inc., Fairshare Vacation Owners Association, RCI, LLC, Wyndham Vacation Ownership, Inc., Terri Dost, Peter Hernandez, and Rob Hebeler (Doc. 78), filed April 18, 2017;

3. Plaintiff's Consolidated Omnibus Response in Opposition to Defendants' Motion to Dismiss (Doc. 84), filed May 18, 2017;

4. Defendants' Reply in Support of Motion to Dismiss (Doc. 88), filed June 9, 2017; and

5. Plaintiff's Sur-Reply to Defendants' Motions to Dismiss (Doc. 99), filed July 5, 2017.

The parties have completed their briefing and the Court is otherwise fully advised on the premises. Upon consideration, the Amended Complaint is due to be dismissed without prejudice as a shotgun pleading.

**I.     BACKGROUND**[1]

**A.     Introduction**

Wyndham operates a global conglomerate of hotels and timeshares. This putative class action involves claims for violations of the Arkansas Trust Code arising out of Wyndham's timeshare business, and impugns Wyndham's timeshare business as rife with self-dealing and profiteering. Plaintiff brings suit against multiple distinct entities in the Wyndham family, in addition to three individuals.[2] When a consumer purchases a timeshare ownership interest from Wyndham, "WVR and [Worldwide] require the consumer to place the entire timeshare interest into a trust created by and fully managed by WVR," the FairShare Vacation Plan Use Management Trust ("Trust"). Plaintiff generally alleges that Defendants engaged in self-dealing, ignored conflicts of interests, and otherwise used their position of trust to enrich themselves at the expense of the putative class. Specifically, the Amended Complaint presses six Counts: (1) violations of the Arkansas Trust Code against all Defendants; (2) breach of fiduciary duty against

---

[1]  This account of the facts is taken from Plaintiff's First Amended Complaint (Doc. 76).

[2]  They are: Wyndham Worldwide Corporation ("Worldwide"), Wyndham Vacation Resorts, Inc. ("WVR"), Wyndham Vacation Ownership, Inc. ("WVO"), FairShare Vacation Owners Association ("FairShare"), RCI, LLC ("RCI") (collectively, "Company Defendants"), and Terri Dost, Peter Hernandez, and Rob Hebeler (collectively, "Individual Defendants").

FVOA, WVR, and the Individual Defendants; (3) negligence against FVOA, WVR, and the Individual Defendants; (4) breach of implied duty of good faith and fair dealing against FVOA and WVR; (5) unjust enrichment against Worldwide, WVR, WVO, and RCI; and (6) civil conspiracy against Worldwide, WVR, WVO, RCI, and the Individual Defendants.

The Trust consists of all property interests and use rights purchased by timeshare consumers. It is governed by a document called the "FairShare Vacation Plan Use Management Trust Agreement" (the "Trust Agreement"). FairShare (the "Trustee") is an Arkansas corporation owned and controlled by Worldwide and WVR. The Individual Defendants are officers and directors of FairShare. Plaintiff alleges that the Individual Defendants control the Trust vis-à-vis their positions at FairShare "at the direction and control of Worldwide and WVR." The beneficiaries of the Trust include individual timeshare owners and WVR.

On March 12, 2012, Plaintiff, Tommy J. Embree, and her late husband purchased a timeshare interest from WVR for $149,206. The purchase was paid through a trade-in of timeshare points, a credit card down payment, and a loan from WVR. On June 2, 2013, after being convinced to upgrade, the Embrees purchased a new timeshare interest from WVR for $224,555. This purchase was paid through a trade-in of existing timeshare points, a credit card payment, and a loan from WVR. In connection with the upgrade, WVR extended the Embrees a $116,485.12 loan with a 10-year repayment term and 11.49% interest rate. WVR required the Embrees to assign their entire timeshare interest to "Club Wyndham Plus", resulting in the timeshare interest being subject to the Trust.

**B.     Claim-Supporting Background Facts**

The Amended Complaint alleges Defendants took part in improper self-dealing and misfeasance. The Amended Complaint assails four categories of conduct (or, as Plaintiff puts it, "schemes") on the part of Defendants giving rise to Plaintiff's claims: (1) WVR's financing of timeshare purchase; (2) Worldwide and WVR's operation of the RCI timeshare exchange program; (3) WVR's FairShare Plus Assessment; and (4) WVR's Guest Certificate Fee.

*1.     Financing Operations*

WVR, a Worldwide subsidiary, finances roughly 50% of the timeshare interests it sells. Because WVR requires timeshare consumers to assign their interest to the Trust, Worldwide (through its control of FairShare, the Trustee) owes the Trust beneficiaries (timeshare owners) a duty of loyalty. Worldwide, WVR, and FairShare use the financing of Trust property to generate profits at the expense of Trust beneficiaries, thus breaching this duty of loyalty. Defendants' own long-term debt is financed at interest rates between 2.95% and 7.375%, while Plaintiff was charged interest rates of 11.49% and 16.99%. Moreover, Worldwide's 2014 10-K filing[3] provides that Worldwide's financing operations "generate[] substantial incremental revenues and profits."

Worldwide, WVR, and FairShare pool consumers' security agreements and sell them to investors. Defendants then use revenues from the securitization of Trust assets to purchase property for Worldwide and to "cash flow other operations." The profits derived from Worldwide's financing and securitization of consumer debt place

---

[3] The federal securities laws require public companies to disclose certain information annually in Form 10-K filings.

Defendants' interest in conflict with Plaintiffs because Worldwide has a perverse incentive to convince Trust beneficiaries to finance timeshares at high interest rates.

### 2. RCI Exchange Program

The Amended Complaint also brings claims arising out of RCI, the timeshare exchange program operated by WVR and Worldwide. Defendants, RCI, WVR, and FairShare, market memberships in RCI to Trust beneficiaries. Consumers who enroll in the RCI program may exchange timeshare intervals with other timeshare intervals enrolled in the program. Through RCI, Defendants charge timeshare consumers a fee for each exchange, which generates profits to Worldwide, WVR, RCI, and FairShare. These fees are not shared with consumer Trust beneficiaries. Plaintiff alleges that Worldwide's operation of the RCI program violates its duty of loyalty to Plaintiff and other Trust beneficiaries.

### 3. FairShare Plus Assessment

FairShare, in its Trustee capacity, charges Plaintiff and Trust beneficiaries a package of fees (collectively, the "FairShare Plus Assessment"). The FairShare Plus Assessment is comprised of a Program Fee and Ownership Association Fee ("OA fee"). FairShare has sole discretion over the amount of the fees. Plaintiff alleges that WVR and FairShare charge "unfair and biased" fees to Trust beneficiaries to drive Worldwide profits. Meanwhile, "WVR, the largest beneficiary of the Trust, is exempt from paying the FairShare Plus Assessment."

### 4. Guest Certificate Fee

The final category of bad conduct Plaintiff addresses is the assessment of "Guest Certificate Fees" by Worldwide. In October 2008, Worldwide, WVR, and FVOA increased

the Guest Certificate Fee from $25 to (i) $99 for consumers requesting the Certificate online, and (ii) $125 for consumers requesting the Certificate over the phone. Plaintiff alleges that the fee increase was designed to increase Worldwide's and WVR's revenue and profit, as the cost to provide the underlying service had not changed. Plaintiff contends that the fee change constitutes self-dealing and a violation of the duty of good faith and loyalty that WVR and FairShare owe Plaintiff and the Trust beneficiaries.

### C. Plaintiff's Claims

Count I of the Amended Complaint, against all Defendants, alleges that Arkansas Code §§ 28-73-802(c)(4) and 28-73-1003(a) impose duties of good faith and loyalty which Defendants violated by: (a) financing timeshare purchases; (b) profiting from the RCI exchange program; (c) charging improper FairShare Plus Assessments; and (d) wrongly increasing Guest Certificate fees.

Count II, against FairShare, WVR, and the Individual Defendants, alleges violations of fiduciary duty arising from Defendants' acts of self-dealing, duty of loyalty violations, and conflict-of-interest transactions. Moreover, Count II asserts that Defendants "consciously or deliberately engaged in oppression, fraud, wantonness, or malice with regard to Plaintiff and members of the proposed class in breach of their fiduciary duties . . . ."

Count III, against FairShare, WVR, and the Individual Defendants, alleges negligence from Defendants' conduct in operating the Trust. Count IV avers that the Trust and related agreements imposed an implied duty of good faith and fair dealing on the trust administrators, which WVR and FairShare breached by "evading the spirit of the

transaction" by (a) charging Plaintiffs and Trust beneficiaries excessive fees, and (b) by engaging in the misleading and deceptive practices supporting Count I.

Count V brings a claim for unjust enrichment against Worldwide, WVR, WVO, and RCI, apparently as an alternative theory of recovery. (Doc. 84, pp. 26–27). Count VI alleges that all named Defendants conspired to violate the Arkansas Trust Code and breach duties owed to Trust beneficiaries.

## II. SHOTGUN PLEADING

As with her initial complaint, Plaintiff's Amended Complaint is a shotgun pleading, and repleader is necessary. Faced with a shotgun pleading, district courts possess the inherent authority to order repleader *sua sponte*. *Fikes v. City of Daphne*, 79 F.3d 1079, 1083 n.6 (11th Cir. 1996).

In *Weiland v. Palm Beach Cty. Sheriff's Office*, 792 F.3d 1313 (11th Cir. 2015), the Eleventh Circuit outlined four types of shotgun complaints:

> The most common type—by a long shot—is a complaint containing multiple counts where each count adopts the allegations of all preceding counts, causing each successive count to carry all that came before and the last count to be a combination of the entire complaint. The next most common type . . . is a complaint . . . replete with conclusory, vague, and immaterial facts not obviously connected to any particular cause of action. The third type of shotgun pleading is one that commits the sin of not separating into a different count each cause of action or claim for relief. Fourth, and finally, there is the relatively rare sin of asserting multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions, or which of the defendants the claim is brought against.

*Id.* at 1321–23 (footnotes omitted). All four categories of shotgun complaints are deficient because "they fail . . . to give the defendants adequate notice of the claims against them and the grounds upon which each claim rests." *Id.* at 1323; *see also Anderson v. Dist. Bd. of Trs. of Cent. Fla. Cmty. Coll.*, 77 F.3d 364, 366 (11th Cir. 1996).

7

The bases for dismissing shotgun pleadings arise from the pleadings' violation of Federal Rules of Civil Procedure 8(a)(2) and 10(b). *Weiland*, 792 F.3d at 1320.

Plaintiff's Amended Complaint falls within the third category of shotgun pleadings identified by the Eleventh Circuit in *Weiland*. (Doc. 76). For instance, Count I indiscriminately asserts claims for violation of two alternative Arkansas Code sections against seven defendants arising from four separate courses of conduct. *See Bickerstaff Clay Prods. Co. v. Harris Cnty.*, 89 F.3d 1481, 1485 n.4 (11th Cir. 1996) ("The complaint is a typical shotgun pleading, in that some of the of the counts present more than one discrete claim for relief."). The Complaint fails to separate into counts the various claims asserted, depriving Defendants of "adequate notice of the claims" asserted and the grounds supporting each claim. *See Weiland*, 792 F.3d at 1323. In re-pleading, Plaintiff shall separate each claim to relief based on a discrete theory and/or series of facts into different Counts.

### III. CONCLUSION

Accordingly, it is hereby **ORDERED AND ADJUDGED**:

1. Defendants' Motions to Dismiss (Doc. 77, 78) are **GRANTED**.
2. The Amended Complaint (Doc. 76) is **DISMISSED** without prejudice.
3. Plaintiff's Motion for Class Certification (Doc. 103) is **DENIED AS MOOT** because there is no operative complaint.
4. On or before **February 26, 2018**, Plaintiff may file a Second Amended Complaint consistent with the directives in this Order.
5. Failure to timely file a Second Amended Complaint in accordance with this requirement will result in closure of this action without further notice.

6. Should Plaintiff file a Second Amended Complaint, at the close of pleadings, the parties are directed to meet and confer telephonically and submit an amended Case Management Report. This case will be converted to a Track III designation.

**DONE AND ORDERED** in Orlando, Florida on February 12, 2018.

PAUL G. BYRON
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Parties